**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KEVAN M. TREWARTHA,**                          **CASE NO. 2:07-cv-981**
                                                            **JUDGE HOLSCHUH**
             **Petitioner,**                          **MAGISTRATE JUDGE ABEL**

**v.**

**TIMOTHY BRUNSMAN, Warden,**

             **Respondent.**

# Report and Recommendation

Petitioner Kevan M. Trewartha, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties.

This action involves petitioner's convictions after a jury trial in the Franklin County Court of Common Pleas on aggravated murder, aggravated robbery, tampering with evidence, and having a weapon while under disability, with firearm specifications. The Ohio Tenth District Court of Appeals affirmed petitioner's convictions, but remanded the case to the trial court for re-sentencing without a capital specification. The trial court re-sentenced petitioner pursuant to the appellate court's remand, and the Ohio Supreme Court dismissed petitioner's subsequent appeals. The state courts also denied petitioner's Rule 26(B) proceedings. In this federal habeas corpus petition, petitioner asserts that he was denied the effective assistance of appellate counsel, and that his sentence violated the Ex Post Facto Clause; he requests the Court to reduce his sentence. For the reasons that follow, the Magistrate Judge concludes that petitioner's claims are without merit and

therefore **RECOMMENDS** that this action be **DISMISSED.**

**FACTS AND PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> By indictment filed March 14, 2003, defendant was charged with seven counts, each with a firearm specification: two counts of aggravated murder with capital specifications, aggravated robbery, two counts of robbery, tampering with evidence, and possession of a deadly weapon while under a disability. Relevant to this appeal, count one charged defendant with aggravated murder committed while in the course of an aggravated robbery with an R.C. 2929.04(A)(7) capital specification asserting that defendant was either the principal offender in the aggravated murder or defendant committed the aggravated murder with prior calculation and design. The second count charged defendant with aggravated murder committed with prior calculation and design and included the same capital specification as the first count.
>
> Defendant's indictment arose out of events occurring on Sunday, February 23 and the early morning hours of Monday, February 24, 2003. According to the state's evidence, at around 3:00 p.m. on Sunday, James Stephens picked up defendant, and the two cruised their Whitehall neighborhood in Stephens's new Chevy Blazer, drinking beer and taking the prescription drug Xanex. The two soon stopped at the house of defendant's girlfriend. Defendant went into the house, also his residence at the time, and emerged with a .38 Taurus revolver he had acquired two days earlier from a friend, Anthony Marinello.
>
> After showing the revolver to Stephens, defendant got back in Stephens's car and they drove to Corey Leggett's house, arriving around 4:00 p.m. Leggett accompanied defendant and Stephens for a quick ride. While driving around the neighborhood, Leggett pointed out the home of Herbert Dingess, and the three conversed about a mutual acquaintance who regularly broke into Dingess's house to steal "weed and stuff."

After five or ten minutes, Stephens and defendant dropped off Leggett at his girlfriend's house.

At approximately 9:00 or 10:00 p.m., Stephens and defendant, both visibly drunk, arrived at the house of Christa Cooper and her roommate, Nina Maestle. Around 12:00 a.m., when Cooper asked Stephens to leave because of his rowdy behavior, defendant accompanied Stephens out to his Blazer. Immediately before defendant's departure from Cooper's house, Maestle saw that defendant had the .38 Taurus revolver.

Stephens testified that once he and defendant were in the Blazer, defendant asked Stephens if he "could give crazy Kev a ride." From Cooper's house, Stephens and defendant went directly to Dingess's house. Sometime shortly before the arrival of Stephens and defendant, two of Dingess's friends, Venus Chandler and Chris Hershey, left Dingess's house for the night.

According to Stephens, upon arriving at Dingess's house, defendant walked directly to the front door. Before Stephens reached the house, and while defendant was in the house, Stephens heard someone inside yell and then heard a gunshot. Stephens hurried into the house and found Dingess lying on the floor with a gunshot wound to his face. Not seeing defendant, but hearing him move through the house, Stephens walked around to the back bedroom and waited for defendant. After defendant left the bedroom, he and Stephens left Dingess's house and sped away from the scene in Stephens's Blazer.

Moments after leaving Dingess's house, Stephens wrecked his Blazer on a nearby telephone pole. A witness heard the crash and looked out the window; he saw defendant pull a gun out of his pants and bury it in the snow. Defendant subsequently removed the gun from the location, and two witnesses saw defendant later deposit the gun near a speed limit sign. Officer Scott Miller recovered Marinello's .38 Taurus revolver from the second location, and he also recovered a gold chain at the scene of the accident. Chandler later identified the gold chain as the one Dingess was wearing the night he died.

Stephens and defendant fled the accident scene but soon were

apprehended. From defendant the police recovered Dingess's money clip containing the same amount of money last known to be in Dingess's possession. Later that afternoon, on Monday, February 24, 2003, an acquaintance arrived at Dingess's house to find the victim's body lying just inside the doorway. The acquaintance called the paramedics, but Dingess was pronounced dead upon their arrival. An autopsy revealed that Dingess died almost immediately from the brain trauma caused by a single gunshot wound to his head.

The jury found defendant guilty of aggravated murder in the course of an aggravated robbery. In addressing the capital specifications to that count, the jury concluded that defendant was not the principal offender, but that he had committed aggravated murder with prior calculation and design during the commission of an aggravated robbery with a firearm. The jury also found defendant guilty of aggravated robbery and tampering with evidence, each with a firearm specification, and possessing a weapon while under a disability. The jury was not instructed on the lesser robbery offenses, and defendant was acquitted of the second charge of aggravated murder that alleged that defendant acted with prior calculation and design.

After a mitigation hearing, the court imposed the jury-recommended sentence of 30 years to life for the aggravated murder charge of which defendant was found guilty. The court also sentenced defendant to a three-year term for the firearm specification, a nine-year term for aggravated robbery, a three-year term for tampering with evidence, a one-year term for the firearm specification offense, and an 11-month term for having a weapon while under a disability, all to be served consecutively.

*State v. Trewartha,* 165 Ohio App.3d 91 (Ohio 10th App. Dist. October 27, 2005). Represented

by new counsel, petitioner raised the following assignment of error on appeal:

The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of

4

the evidence.

*See id.* On October 27, 2005, the appellate court sustained in part and overruled in part petitioner's sole assignment of error, concluding that there was insufficient evidence to sustain the capital specification of prior calculation and design but otherwise affirmed the trial court's judgment, and remanded the case to the trial court for re-sentencing on the murder conviction without a capital specification. *Id*. Petitioner filed a timely appeal to the Ohio Supreme Court in which he again raised the same claim as raised in the appellate court below. *Exhibit 13 to Return of Writ*. On February 22, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *State v. Trewartha*, 108 Ohio St.3d 1475 (2006). Subsequently, petitioner

> filed a *pro se* application to reopen under App.R. 26(B), arguing, in part, that his appellate counsel was ineffective for failing to object to the imposition of consecutive sentences pursuant to *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, and *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856. We denied the application, finding that the above issue was moot because the case had been remanded for resentencing, and appellant could raise the issue at the resentencing or an appeal of such. See *State v. Trewartha* (Mar. 23, 2006), Franklin App. No. 04AP-963 (Memorandum Decision).
>
> Upon remand, appellant filed a written statement in allocution of sentence, in which he claimed it was improper to sentence him to anything other than the minimum sentence, pursuant to *Foster* and the due process and ex post facto provisions of the state and federal constitutions. Subsequently, on June 15, 2006, the trial court resentenced appellant, ordering the following: 20 years to life imprisonment, with respect to the

conviction for murder; nine years imprisonment, with respect to the conviction for aggravated robbery; three years imprisonment, with respect to the conviction for tampering with evidence; 11 months, with respect to the conviction for having a weapon while under disability; three years mandatory actual consecutive incarceration, with respect to the firearm specification for the murder conviction (the firearm specification with respect to the convictions for aggravated robbery and tampering with evidence merged with the firearm specification for the murder conviction); the sentence for the aggravated robbery conviction be served consecutive to the sentence for the murder conviction; the sentence for tampering with evidence be served consecutive to the sentences for murder and aggravated robbery; and the sentence for having a weapon while under disability be served consecutive to the sentences for murder, aggravated robbery, and tampering with evidence.

*State v. Trewartha*, 2007 WL 185016 (Ohio 10th App. Dist. January 25, 2007). Petitioner filed a timely appeal, asserting the following assignment of error:

> THE TRIAL COURT DID NOT HAVE THE STATUTORY AUTHORITY TO IMPOSE CONSECUTIVE SENTENCES WHEN THE IMPOSITION OF THIS SENTENCE VIOLATED THE DEFENDANT'S SIXTH AMENDMENT AND DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION AND THE EQUIVALENT RIGHTS UNDER THE OHIO CONSTITUTION.

*See id.* On January 25, 2007, the appellate court affirmed the trial court's judgment. *Id.* Petitioner again timely appealed to the Ohio Supreme Court, raising the same claim as he raised in the appellate court below. *Exhibit 32 to Return of Writ.* On June 6, 2007, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *State v. Trewartha*, 114 Ohio St3d 1413 (2007).

On January 24, 2006, petitioner filed a *pro se* application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted the following claims:

> 1. Appellate counsel rendered constitutionally ineffective assistance of counsel where he failed to recognize, argue and brief the fact that trial counsel was ineffective for not objecting to appellant's aggravated murder conviction [] secured in violation of the double inference rule and therefore his due process rights under the Ohio and United States Constitution.
>
> 2. Appellate counsel rendered constitutionally ineffective assistance of counsel where he failed to recognize, argue and brief the fact that trial counsel was ineffective for not [objecting] to appellant being convicted solely upon the uncorroborated testimony of his co-conspirator unsupported by independent evidence in violation of Ohio Revised Code §2923.01(H)(1) and the due process clause of the Ohio and U.S. Constitution.
>
> 3. Appellate counsel provided the ineffective assistance of counsel on direct appeal where he failed to recognize, argue and brief the trial court's plain error of sentencing the appellant to more than the statutory minimum sentence as provided by Ohio Revised Code §2929.14....

*Exhibit 15 to Return of Writ.* On March 23, 2006, the appellate court denied petitioner's application to reopen the appeal. *Exhibit 17 to Return of Writ.* On July 5, 2006, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *Exhibit 21 to Return of Writ.*

Petitioner also pursued post conviction relief. On July 27, 2005, he filed a *pro se* post conviction petition in the trial court. He asserted that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). *Exhibit 22 to Return of Writ.* Apparently that action remains pending before the state trial court.

On September 27, 2007, petitioner filed the instant *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. 2254. He alleges that he is in the custody of respondent in

violation of the Constitution of the United States based upon the following grounds:

> 1. Ineffective assistance of appellate counsel in violation of Sixth and Fourteenth Amendments.
>
> Appellate counsel failed to cite trial counsel's ineffectiveness in allowing convictions to rest upon violation of double interference rule contrary to Due Process Clause. Counsel also failed to cite trial counsel's ineffectiveness in not objecting to convictions resting upon the uncorroborated testimony of co-defendant contrary to O.R.C. §2923.01(H)(1) and therefore Due Process Clause of U.S. Constitution.
>
> 2. Petitioner's resentencing violates Due Process Clause as constituting Ex Post Facto law.
>
> State trial court's resentencing of petitioner violated Due Process Clause of 14th Amendment as constituting judicial enlargement of the statutes which constitutes Ex Post Facto violation contrary to clearly established federal law as determined by the United States Supreme Court.
>
> 3. Relief as to *Apprendi-Blakely* violation must be made permanent under doctrine of pendent jurisdiction.
>
> Since no state court remedy exists in Ohio to cure *Apprendi-Blakely* violation because *State v. Foster*... violates Ex Post Facto and Double Jeopardy Clauses of the U.S. Constitution, habeas court has pendent jurisdiction to reduce sentences pursuant to 28 U.S.C. §2254(b)(i), (ii), and §1367.

It is the position of the respondent that petitioner's claims are without merit.

### CLAIM ONE

In claim one, petitioner asserts that he was denied the effective assistance of

appellate counsel because his attorney failed to raise on appeal issues of ineffective

assistance of trial counsel. The state appellate court rejected this claim as follows:

> Defendant[]... contends appellate counsel was ineffective in not assigning as error trial counsel's ineffectiveness in failing to object to his conviction pursuant to the double inference rule. Defendant argues that because he was convicted as an "aider and abettor" to aggravated murder, the jury inferred his purpose to kill only after it first inferred his co-defendant's purpose to kill. Defendant claims such stacking of inferences violates his due process rights because no other evidence rationally connects the jury's verdict to his conviction.
>
> Although the rule prohibiting the stacking of one inference upon another is still recognized in Ohio, it has limited application. *Donaldson v. Northern Trading Co.* (1992), 82 Ohio App.3d 476, 481. The rule prohibits only the drawing of one inference solely and entirely from another inference, where the subsequent inference is unsupported by any additional facts of inferences drawn from other facts. The rule does not forbid the use of parallel references in combination with additional facts; nor does it prohibit drawing multiple inferences drawn from the evidence are [sic] an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly limited to inferences drawn exclusively from other inferences. *Id.*
>
> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. *State v. Johnson* (2001), 93 Ohio St.3d 240, 245. The mere presence of an accused at the scene of a crime, in and of itself, is not sufficient to prove the accused was an aider and abettor. *State v. Widner* (1982), 69 Ohio St.2d 267, 245, but criminal intent may be inferred from presence, companionship and conduct before and afer the offense is committed. *Johnson,* at 245; *State v. Pruett* (1971), 28 Ohio App.2d 29, 34.
>
> Here, defendant was convicted of aggravated murder when the jury found he purposely aided and abetted another in com-

mitting the offense of aggravated murder. Although defendant's aggravated murder conviction was derived from his complicity to the underlying offense, sufficient additional evidence demonstrates that he supported, assisted, or encouraged purposely causing the death of another. The state's witnesses linked defendant to the procurement of the alleged murder weapon, placed defendant at the scene of the crime with the weapon, proximally connected defendant and the only other possible shooter to the victim at the time of the fatal gunshot, described defendant's attempt to conceal the weapon during escape, and associated defendant with property last seen on the victim's person. Such facts are more than enough for a jury to directly or circumstantially find defendant guilty of complicity in aiding and abetting aggravated murder.

Because the jury did not violate the double inference rule in finding him guilty of complicity to aggravated murder, defendant's trial counsel was not ineffective in failing to object. Accordingly, appellate counsel was not ineffective for failing to raise the issue on appeal.

Defendant[]... contends appellate counsel was ineffective in not assigning as error trial counsel's ineffectiveness in failing to object to his conviction pursuant to R.C. 2923.01(H)(1). R.C. 2923.01(H)(1) states that "[n]o person shall be convicted of conspiracy upon the testimony of a person with whom the defendant conspired, unsupported by other evidence." Defendant argues that since his conviction was procured solely upon the uncorroborated testimony of co-defendant James Stevens, his trial and appellate counsel were ineffective in not challenging his conviction.

Defendants argument is unpersuasive. R.C. 2923.01(H)(1) only applies to a conviction for conspiracy. Defendant was convicted of complicity to aggravated murder, not conspiracy. Complicity and conspiracy are two separate and distinguishable offenses to which the law attaches different standards of proof and different penalties. *Cf.* R.C. 2923.01 and 2023.03. Because R.C. 2923.01(H)(10 does not apply to defendant's aggravated murder conviction, defendant's trial counsel was not ineffective in failing to object, and appellate counsel was

not ineffective for failing to raise this meritless issue on appeal.

*See Exhibit 17 to Return of Writ; Exhibits to Petition.*

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Defendants appealing their criminal convictions enjoy the same Sixth Amendment right to the effective assistance of counsel on a direct appeal as of right that they have during trial. While appellate counsel is not expected to raise every non-frivolous issue on direct appeal, counsel is obligated to provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). As with an ineffective assistance of trial counsel claim, a petitioner must demonstrate that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 696; *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

As discussed by the state appellate court, because the record reflects neither that O.R.C. §2923.01(H)(1) applied to petitioner's conviction as an aider and abettor, nor that petitioner's convictions violated Ohio's double inference rule, *see Donaldson v. N. Trading Co., supra*, 82 Ohio App.3d at 482, petitioner has failed to establish that his appellate

counsel performed in a constitutionally ineffective manner in failing to raise such issues on direct appeal. He likewise has failed to establish that the state court's decision denying his claim of ineffective assistance of appellate counsel was contrary to or involved an unreasonable application of clearly established federal law, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. 2254(d), (e).

Claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that the trial court's re-sentencing violated due process and the Ex Post Facto Clause. The state appellate court rejected this claim as follows:

> Appellant asserts in his assignment of error that the trial court's judgment ordering consecutive sentences for crimes committed prior to *Foster* was violative of due process rights and ex post facto principles. Appellant maintains that, pursuant to the sentencing statutes in effect at the time his crimes were committed, there was a presumption of concurrent terms. In *Foster*, the Ohio Supreme Court held that, under the United States Supreme Court's decisions in *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, and *Blakely, supra*, portions of Ohio's sentencing scheme were unconstitutional because they required judicial fact finding before a defendant could be sentenced to more than the minimum sentence, the maximum sentence, and/or consecutive sentences. *Foster,* at paragraph one of the syllabus. As a remedy, the Ohio Supreme Court severed the offending sections from Ohio's sentencing code. Thus, pursuant to *Foster*, trial courts had full discretion to impose a prison sentence within the statutory range and were no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum

14

sentences. *Id.*, at ¶ 100.

This court recently addressed the *Foster* decision with regard to the ex post facto prohibition and due process in *State v. Gibson*, Franklin App. No. 06AP-509, 2006-Ohio-6899. In *Gibson*, this court found the retroactive application of *Foster* did not violate the right to due process and the ex post facto clause. We determined that we were bound to apply *Foster* as it was written. *Id.*, at ¶ 15, citing *State v. Alexander*, Franklin App. No. 06AP-501, 2006-Ohio-6375. We explained that it is unlikely the Ohio Supreme Court would direct inferior courts to violate the constitution, and, in any event, inferior courts are bound by Ohio Supreme Court directives. *Id.*, citing *State v. Grimes*, Washington App. No. 04CA17, 2006-Ohio-6360; *State v. Hildreth*, Lorain App. No. 06CA8879, 2006-Ohio-5058; and *State v. Durbin*, Greene App. No.2005-CA-134, 2006-Ohio-5125. We further reasoned in Gibson that, because the criminal defendants were aware of the potential sentences at the time they committed their crimes, and because the remedial holding of *Foster* was not unexpected, *Foster* did not violate due process notions. *Id.*, at ¶ 16, citing *State v. McGhee*, Shelby App. No. 17-06-05, 2006-Ohio-5162. We also noted that the Fifth District Court in *State v. Paynter*, Muskingum App. No. CT2006-0034, 2006-Ohio-5542, observed that several federal circuit courts have addressed these issues in relation to the United States Supreme Court's decision in *State v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, and rejected similar arguments regarding ex post facto and due process violations. *Id.*, citing *Paynter*, at ¶ 42.

In the present case, like the defendant in *Gibson*, appellant knew the statutory range of punishments at the time he committed the offenses for which he was convicted. The statutory range of punishments has not changed in light of *Foster*. Thus, *Foster* did not judicially increase appellant's sentence, and it did not retroactively apply a new statutory term to an earlier committed crime. Further, " 'at the time that appellant committed his crimes the law did not afford him an irrebuttable presumption of * * * concurrent sentences.' " *Id.*, at ¶ 18, citing *Alexander*, at ¶ 8. Therefore, we conclude that the remedial holding of *Foster* does not violate appellant's due process rights or the ex post facto principles contained therein.

> For these reasons, and, based upon our rationale in *Gibson,* we overrule appellant's assignment of error.

*State v. Trewartha, supra,* 2007 WL 185016. Again, the decision of the state appellate court is presumed to be correct. 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.* Petitioner has failed to establish that the state appellate court's decision is unreasonable so as to justify federal habeas corpus relief. *See id.*

This Court agrees with other courts to consider the issue which have rejected this same claim.

> Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, §10. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:
>
>> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process ... would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decision making, on the other.
>
> *Rogers v. Tennessee,* 532 U.S. 451, 460, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).
>
> Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decision making are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that courts may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). The Supreme Court has explicitly declined to apply all the protections of the

*Ex Post Facto* Clause to courts by way of the due process clause:

> To the extent petitioner argues that the Due Process Clause incorporates the specific prohibitions of the *Ex Post Facto* Clause ... petitioner misreads *Bouie.* [N]owhere in the opinion did we go so far as to incorporate jot-for-jot the specific categories of [protection in the *Ex Post Facto* Clause] into due process limitations on the retroactive application of judicial decisions.

> Nor have any of our subsequent decisions addressing *Bouie*-type claims interpreted *Bouie* as extending so far. Those decisions instead have uniformly viewed *Bouie* as restricted to its traditional due process roots. In doing so, they have applied *Bouie's* check on retroactive judicial decision making not by reference to the *ex post facto* categories [of protection], but, rather, in accordance with the more basic and general principle of fair warning that *Bouie* so clearly articulated.

> Petitioner observes that the Due Process and *Ex Post Facto* Clauses safeguard common interests-in particular, the interests in fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws. While this is undoubtedly correct, petitioner is mistaken to suggest that these considerations compel extending the strictures of the *Ex Post Facto* Clause to the context of common law judging.... Moreover, "[g]iven the divergent pulls of flexibility and precedent in our case law system," incorporation of the [categories of protection in the *Ex Post Facto* Clause] into due process limitations on judicial decision making would place an unworkable and unacceptable restraint on normal judicial processes and would be incompatible with the resolution of uncertainty that marks any evolving legal system.

*Id.* at 458-461 (citations omitted).

> The Supreme Court has never held that the retroactive application of a judicial reconstruction of a statute that results in the loss of a presumption of a minimum sentence within a sentencing range violates the *Ex Post Facto* Clause or the due process clause of the United States Constitution.

*Pitts v. Warden,* 2008 WL 4758697 (N.D. Ohio October 29, 2008)(footnote omitted).

> Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

> *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. As petitioner apparently concedes ( *see* Doc. 14, p. 11), Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *10 (N.D.Ohio Feb.1, 2008) (unpublished); *see also Rogers,* 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

> Nevertheless, the Fourteenth Amendment's Due Process Clause does limit *ex post facto* judicial decision-making. *Rogers,* 532 U .S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on

the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia,* 378 U.S. 347, 351, 352, 354-55, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)); *see also United States v. Barton,* 455 F.3d 649, 654 (6th Cir.) ("when addressing *ex post facto*-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied,* 549 U.S. 1087, 127 S.Ct. 748, 166 L.Ed.2d 579 (2006).

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely, Booker,* and *Foster* did not change the elements necessary to convict petitioner ... and petitioner was aware of the potential penalties he faced ... [B]oth before and after *Foster,* petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties.

*Hooks v. Sheets*, 2008 WL 4533693 (S.D. Ohio October 3, 2008); *see also Smith v. Wilson*, 2008 WL 4758696 (N.D. Ohio October 29, 2008)(same).

## CLAIM THREE

In claim three, petitioner appears to request this Court to reduce his sentence as unconstitutionally imposed; however, the record fails to reflect either that petitioner's sentence violated the Ex Post Facto Clause, or any other basis for the relief petitioner seeks.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be dismissed.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1)(B) 1; Rule 72(b), Fed.R.Civ.P.

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn,* 474 U.S. 140, 150-52, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

s/Mark R. Abel
United States Magistrate Judge
